(C.D. 4104)

MARMAX TRADING CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 23, 1970)

*Allerton deC. Tompkins* (*Irving Levine* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

NEWMAN, Judge: The issue in this case involves the proper rate of duty on certain articles imported from Japan described on the invoice as "Pouring Spouts with 17 inch nozzle." The merchandise was assessed with duty by the Government at the rate of 19 per centum ad valorem under the provision in item 657.20 of the Tariff Schedules of

the United States (TSUS) for "Other" articles of iron or steel, not coated or plated with precious metal.

Plaintiff claims that the pouring spouts are properly dutiable at the rate of 17 per centum ad valorem under the provision in item 651.47, TSUS, for "Other" hand tools of iron or steel, not specially provided for.[1]

We hold that plaintiff has sustained its claim.

### STATUTES INVOLVED

Classified under:

Schedule 6, Part 3, Subpart G, TSUS:

Articles of iron or steel, not coated or plated with precious metal:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Other articles:

\*　　\*　　\*　　\*　　\*　　\*　　\*

657.20　　　Other _____ 19% ad val.

Claimed under:

Schedule 6, Part 3, Subpart E, TSUS:

Hand tools (including table, kitchen, and household implements of the character of hand tools) not specially provided for, and metal parts thereof:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Other hand tools:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Other:
Of iron or steel:

\*　　\*　　\*　　\*　　\*　　\*　　\*

651.47　　　Other _____ 17% ad val.

### THE ISSUE

Inasmuch as the provision for "Other" hand tools not specially provided for in item 651.47, TSUS, is more specific than the provision for "Other" articles of iron or steel in item 657.20, TSUS, the sole issue presented is whether the pouring spouts are properly dutiable as hand tools.

---

[1] Alternative claims in the protest were abandoned by plaintiff's counsel at the trial, and are hereby dismissed.

## THE RECORD

At the trial, the record in *Hollywood Accessories, Division of Allen Electronics & Equip. Co.* v. *United States*, 60 Cust. Ct. 360, C.D. 3391, 282 F. Supp. 499 (1968), was incorporated on plaintiff's motion. In addition, plaintiff called one witness, its president Max Amper, and introduced two exhibits into evidence. Defendant offered no evidence.

Mr. Amper testified that the plaintiff corporation is engaged in importing and distributing hand tools, and that for twenty-three years past he had been responsible for the buying and selling of the products handled by his company. Amper stated that he was personally familiar with the merchandise in issue, and identified a representative sample which was received in evidence. The witness' testimony and the representative sample establish the following facts:

The pouring spouts are comprised of a nine inch, slightly curved, hollow metal tube with a cutting blade attached at one end, with a seventeen-inch flexible nozzle soldered to the opposite end. This pouring spout is used, first, for manually piercing and cutting a can of automotive lubricating oil or antifreeze, and then for pouring the contents of the opened can into the automobile's engine or radiator. While piercing the can, the curved metal tube portion of the article serves as a handle, and the blade is attached to the article in such manner that when forced into the can, the area around the opening is effectively sealed. When the opened can is inverted to empty its contents, the curved metal tube then serves as a conduit or spout enabling the oil or antifreeze to flow from the can into the flexible nozzle and then into the automobile's engine or radiator. The long flexible nozzle facilitates pouring oil into "any difficult to get at area" (R. 7), and that is the nozzle's only purpose.

## HOLLYWOOD ACCESSORIES CASE

Plaintiff cites *Hollywood Accessories, supra*, as a controlling precedent. There, certain pouring spouts or oilcan spouts, consisting of a curved metal tube with a spout at one end and with a rounded cutting blade inserted into the tube at the other end, utilized to puncture an oilcan and pour the oil through the spout into an automobile engine, were held to be dutiable under item 651.47 as a hand tool, not specially provided for. The court noted that the *Explanatory Notes to the Brussels Nomenclature* include under hand tools, among other items: oilcans, oilers, and can openers, "which is some indication that the implements used for puncturing cans and those used for oiling were considered to be hand tools."[2]

_____
[2] 60 Cust. Ct. at 367.

The rationale of *Hollywood Accessories* is succinctly summarized in the headnote, which reads in part as follows:

> The article has a blade or working edge of base metal, thus meeting the qualification in headnote 1, subpart E, part 3, schedule 6, to which item 651.47 belongs. It is used by the unaided hands. Puncturing a can is the primary purpose of the article; its use for pouring is dependent upon its first being used to puncture and seal the can. The spout portion is formed and serves as a handle for the blade. While the blade could be used alone, the spout could not be used without puncturing the can and attaching the implement to it. The implement aids in performing the work required—getting the liquid from the can into the engine or receptacle. The fact that this may have been done formerly by the use of a can opener or punch along with a funnel does not make the implement any the less a tool.

What distinguishes the present merchandise from that in *Hollywood Accessories* is the additional feature of the seventeen-inch flexible nozzle which has been soldered onto the end of the curved metal tube. Defendant vigorously challenges the applicability of our prior holding to this merchandise. What defendant now claims is that the addition of the nozzle created an article which is "more than" a hand tool. We disagree.

### DEFENDANT'S "MORE THAN" THEORY

Defendant's "more than" theory is untenable. Cited in support of such theory are: *V. Alexander & Company, Inc.* v. *United States*, 59 Cust. Ct. 510, 514, C.D. 3212, 276 F. Supp. 573 (1967); and *United States* v. *Compania Azucarera Del Camuy, Inc.*, 45 CCPA 4, C.A.D. 664 (1957).

In *Alexander*, *supra*, an article consisting of a shovel head and a pick head affixed to a single handle (hence, a combination pick and shovel), was classified by the Government as a hand tool under item 651.47, TSUS. Plaintiff did not claim that the combination article was "more than" a hand tool, but rather contended that the separate *eo nomine* provisions for shovels and picks were applicable. This court found that the combination shovel and pick was a single article of commerce, as classified, and not two separate articles, as claimed by plaintiff. Accordingly, the protest was overruled.

Unlike *Alexander*, the issue here presented is whether the imported articles are more than hand tools. As indicated above, we find against defendant's contention. While the instant articles are clearly more than *can openers* and more than mere *spouts*, the combination of both of the complemetary features into one commercial entity does not make

the articles more than hand tools. The latter tariff description is entirely adequate to cover both features and functions of the involved articles. Cf. *United Carr Fastener Corporation* v. *United States* (*Northern Screw Corp., Party in Interest*), 54 CCPA 89, C.A.D. 913 (1967).

The holding of the appellate court in *Compania* that sugar cane slings made of chain having a pulley element at one end and a hook at the other end, with latches and locking elements, were more than chains of iron or steel and constituted agricultural implements does not aid defendant's position in the present case. The tariff provision for hand tools, as noted above, is broad enough to cover the present article; by contrast, the tariff provision for chains was not broad enough to cover the sugar cane slings in *Compania*.

### Conclusion

In brief, we do not think that the flexible nozzle makes the instant articles something more than hand tools within the purview of item 651.47. While it is true, of course, that the long nozzle enables the present pouring spouts to be used where those in *Hollywood Accessories* would not be efficient, nevertheless and significantly the basic character and function of both pouring spouts are the same. In these circumstances, the rationale of our prior holding in *Hollywood* is apposite.

Plaintiff's claim under item 651.47, TSUS, is sustained, and judgment will issue accordingly.