BEACON CYCLE & SUPPLY CO., INC.

v.

UNITED STATES.

C.D. 4764.

United States Customs Court.

Sept. 5, 1978.

Barnes, Richardson & Colburn, New York City (Richard C. King and James Caffentzis, New York City, of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, and Mark K. Neville, Jr., Trial Atty., New York City, for defendant.

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Hong Kong. The merchandise, described on the customs invoices as "bicycle radios complete with accessories," consists of a radio-headlight in a common housing, batteries, a lock and mounting bracket.

Each component was separately classified by the customs officials. The only portion of the classification contested by the plaintiff, and thus the only issue before this court, is the correctness of the classification of the radio-headlight component. The radio-headlight was classified by the customs officials as an entirety as "solid-state (tubeless) radio receivers" under item 685.23 of the Tariff Schedules of the United States [TSUS] with a rate of duty of 10.4% ad valorem.

Plaintiff contests the classification and, hence, the rate of duty assessed upon the disputed merchandise, i. e., the radio-headlights. It contends that, as an entirety, the merchandise should have been classified as

"electrical articles, and electrical parts of articles, not specially provided for," under item 688.40 with a rate of duty of 6.5% ad valorem.

Defendant concedes that the imported merchandise is not a "solid-state (tubeless) radio receiver" under item 685.23, TSUS, and that it has been improperly classified by the customs officials. It submits an alternative classification, and contends that the merchandise should properly and lawfully be classified as "other parts of bicycles" under item 732.36 of the tariff schedules, with a rate of duty of 18% ad valorem.

The pertinent provisions of the tariff schedules are as follows:

Classified by the customs officials:

> Schedule 6, "Part 5.—Electrical Machinery and Equipment
>
> \*   \*   \*   \*   \*   \*   \*
>
> Radiotelegraphic and radiotelephonic transmission and reception apparatus; radio broadcasting and television transmission and reception apparatus, and parts thereof:
>
> \*   \*   \*   \*   \*   \*   \*
>
> 685.23    Solid-state (tubeless) radio receivers ............ 10.4% ad val."

Plaintiff's claimed classification:

> Schedule 6, "Part 5.—Electrical Machinery and Equipment
>
> \*   \*   \*   \*   \*   \*   \*
>
> 688.40   Electrical articles, and electrical parts of articles, not specially provided for .............. 6.5% ad val."

Defendant's claimed alternative classification:

> Schedule 7, "Subpart C.—Wheel Goods
>
> \*   \*   \*   \*   \*   \*   \*
>
> Parts of bicycles:
>
> \*   \*   \*   \*   \*   \*   \*
>
> 732.36   Other parts of bicycles ........ 18% ad val."

Defendant's alternative claim that the imported merchandise should be classified as "other parts of bicycles" under item 732.-36 is of special significance since defendant not only seeks to reclassify the merchandise, but also because item 732.36 carries a rate of duty in excess of the rate assessed by the customs officials.

The record consists of a representative sample of the merchandise, and the testimony of the defendant's witness, Mr. Charles F. Bishop, president of Bright Star Industries, a manufacturer of bicycle accessories.

There is no dispute as to the description of the merchandise in issue. It consists of a radio-headlight in a common housing. The bracket and lock, not in dispute, permit its attachment to the handlebars of a bicycle. Both the radio and the headlight receive their power from batteries included in the merchandise but not in dispute. The radio and headlight may be operated simultaneously or separately.

The defendant has admitted that the customs officials have improperly classified the merchandise since it is well established in customs law that if an entirety has two functions, each of which is independent and equal, the importation cannot be classified under the specific tariff provision which covers either of the functions. Pertinent judicial authority teaches that a third classification must be found which encompasses both functions of the imported merchandise, and which most closely describes its character as a single entity. *Remington Rand Div. of Sperry Rand Corp. v. United States*, 51 CCPA 57, C.A.D. 837 (1964); *Ashflash Corp. v. United States*, 76 Cust.Ct. 112, 412 F.Supp. 585 (1976); *V. Alexander & Co. v. United States*, 59 Cust.Ct. 510, 276 F.Supp. 573 (1967).

The concept of entireties has been judicially expounded in several cases that are well known in the field of customs law. These cases indicate clearly the requirements for merchandise to be dutiable as an entirety. *See, e. g., Miniature Fashions, Inc. v. United States*, 54 CCPA 11, C.A.D. 894 (1966); *Gallagher & Ascher Co. v. United States*, 63 Cust.Ct. 223, C.D. 3899 (1969). In the *Miniature Fashions* case, the Court of Customs and Patent Appeals quoted the following explanation of the law of entireties found in the case of *Donalds Ltd. v. United States*, 32 Cust.Ct. 310, C.D. 1619 (1954):

"[I]f there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent." 54 CCPA at 14.

In the present case, the radio and headlight were already permanently combined in a common housing when imported, and cannot be physically separated and remain operational. A single common source provides power for both functions, and the importation is a complete article of commerce. In view of the nature of the imported merchandise, the defendant has conceded that it is an entirety for customs classification purposes.

Defendant asserts that the merchandise is classifiable as "other parts of bicycles" under item 732.36, TSUS, and not as electrical articles not specially provided for, under item 688.40, TSUS, as claimed by plaintiff. In support of its claim, defendant stresses that "General Interpretative Rule 10(ij), TSUS, establishes the principle that, 'a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.'" It emphasizes that since plaintiff's claimed classification under item 688.40 is not a specific provision, but rather a general or "basket" provision for electrical articles "not specially provided for," it cannot prevail over a "parts" provision such as item 732.36, TSUS.

The courts have held on numerous occasions that a provision for "parts" is deemed more specific than a provision for "articles not specially provided for," and prevails over a general or "basket" provision. See J. E. Bernard & Co. v. United States, 436 F.2d 506, 58 CCPA 91 (1971); Henry A. Wess, Inc. v. United States, 79 Cust.Ct. 6, 434 F.Supp. 650 (1977); J. E. Bernard & Co. v. United States, 59 Cust.Ct. 31, C.D. 3060 (1967).

Plaintiff does not dispute this principle of customs law but disagrees as to its application to this merchandise. Plaintiff readily admits that the headlight portion of the article, standing alone, would be a "part" of a bicycle under item 732.36, TSUS, but vigorously denies that the radio portion of the article can be a "part" of a bicycle. It asserts that, since the radio portion is not a "part" of a bicycle, the article as an entirety cannot be a part of a bicycle.

The defendant contends that the imported radio and headlight, as an entirety, is a "part" of a bicycle. Citing pertinent decisions of the Court of Customs and Patent Appeals, the defendant, in its brief, urges that an "article regarded by the bicycle industry as a bicycle accessory is classifiable as a bicycle part."

Originally, an article could not be a "part" for customs duty purposes unless it was "an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*." *United States v. Willoughby Camera Stores, Inc.*, 21 CCPA 322, 324, T.D. 46851 (1933) (emphasis in original), *cert. denied*, 292 U.S. 640, 54 S.Ct. 773, 78 L.Ed. 1492 (1934). *Cf. Mead Cycle Co. v. United States*, 28 Treas.Dec. 389, T.D. 35223 (1915). That view referred to as the "rule of essentiality," no longer prevails. It is now clear that an article can be a "part" for customs duty purposes even though it is merely an "accessory" or "optional equipment." *Victoria Distributors, Inc. v. United States*, 425 F.2d 759, 57 CCPA 76 (1970); *Gallagher & Ascher Co. v. United States*, 52 CCPA 11, C.A.D. 849 (1964); and cases cited in *Haan v. United States*, 67 Cust.Ct. 104, 332 F.Supp. 182 (1971). *See also Mattel, Inc. v. United States*, 61 Cust.Ct. 75, 287 F.Supp. 999 (1968) in which Judge Maletz, writing for the court, found that wigs for dolls were "parts" even though they were referred to as "accessories." In the *Mattel* case, although the wigs were parts of dolls, by virtue of Rule 10(ij) they were nevertheless held to be classifiable under the provision which specifically covered "wigs."

In the bicycle trade, an "accessory" is "optional equipment not absolutely essential to the operation of the bicycle as a locomotion device." *Victoria Distributors, Inc. v. United States*, 425 F.2d at 761, 57 CCPA at 79. The radio-headlight combination is an accessory because a bicycle may be used without it in the performance of its primary function, i. e., the transportation of passengers.

Whether a given article is a part of another article depends on the nature of the so-called "part," and its function and purpose in relation to the article which it is designed to serve. *Gallagher & Ascher Co. v. United States*, 52 CCPA 11, C.A.D. 849 (1964); *Haan v. United States*, 67 Cust.Ct. 104, 332 F.Supp. 182 (1971). A significant factor in determining whether merchandise is a "part" is whether it is dedicated for use on the article. *Victoria Distributors, Inc. v. United States*, 425 F.2d 759, 57 CCPA at 80; *Oxford International Corp. v. United States*, 70 Cust.Ct. 217, 223 n.2, C.D. 4433 (1973).

General Interpretative Rule 10(ij) provides that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article . . . ." Defendant's witness, Mr. Charles F. Bishop, stated that the radio-headlight was designed for attachment to, and use on, a bicycle. He testified that the official sample, which was entered into evidence, would be attached to the handlebars of a bicycle by means of a mounting bracket with a screw and a lock. The mounting bracket, screw and lock are integral components of the radio-headlight. According to Mr. Bishop, the radio-headlight can be removed only by unlocking the lock and unscrewing the bolt. The method of attaching the radio-headlights to bicycle handlebars makes removal and installation difficult. On cross-examination, he testified that the merchandise not only was designed for use on a bicycle but also that it has no other reasonable use or function.

The specific and exclusive use of the radio-headlight for a bicycle is readily apparent by an examination of the official sample, which is equipped with a clamp to mount it on the handlebars of a bicycle. It has long been acknowledged by this court and the Court of Customs and Patent Appeals that official samples are potent witnesses having great probative value. *United States v. Halle Bros. Co.*, 20 CCPA 219, T.D. 45995 (1932); *Tilton Textile Corp. v. United States*, 77 Cust.Ct. 27, 424 F.Supp. 1053 (1976), *aff'd*, 565 F.2d 140, 65 CCPA —— (1977). Thus, even in cases in which the testimony as to actual use is limited, the character and design of the official sample itself may compel a finding as to the primary use of the merchandise. *See Leaf Brands, Inc. v. United States*, 70 Cust.Ct. 66, 73, C.D. 4409 (1973). Except for what may be termed "fugitive" uses, the testimony and an examination of the official sample leave no doubt, and the court finds, that the merchandise has no use other than on a bicycle.

Chief use, or even the sole use, however, in and of itself does not necessarily make an importation a "part." *Robert Bosch Corp. v. United States*, 63 Cust.Ct. 187, 305 F.Supp. 921 (1969). To be classifiable as a "part," the merchandise must serve a useful function in relation to the main article so that in some way it contributes to the safe or efficient operation of that article. *Victoria Distributors, Inc. v. United States*, 425 F.2d 759, 57 CCPA 76 (1970); *Gallagher & Ascher Co. v. United States*, 52 CCPA 11, C.A.D. 849 (1964); *Hancock Gross, Inc. v. United States*, 76 Cust.Ct. 237, C.D. 4662 (1976); *Haan v. United States*, 67 Cust.Ct. 104, 332 F.Supp. 182 (1971). No one can doubt that measured by this standard, a bicycle headlight is a "part" of a bicycle since it provides illumination for nighttime riding. *Victoria Distributors, Inc. v. United States*, 425 F.2d 759, 57 CCPA 76 (1970) (battery-operated horn-lights properly classified as parts of bicycles under Tariff Act of 1930); *Victoria Distributors, Inc. v. United States*, 425 F.2d 763, 57 CCPA 80 (1970) (generator lighting sets properly classified as parts of bicycles under Tariff Act of 1930); *Oxford International Corp. v. United States*, 70 Cust.Ct. 217, C.D.

4433 (1973) (battery-operated horn-lights properly classified as parts of bicycles under TSUS). As noted in the *Oxford International* case, "many states require bicycles to be equipped with bicycle lamps for their safe and proper operation at night." 70 Cust.Ct. at 225.

Plaintiff agrees that a bicycle headlight is a "part" of a bicycle for customs classification purposes, but claims that the independent radio function makes the radio-headlight "more than" a bicycle part. In its brief it asserts that "the imported merchandise is concededly 'more than' headlights and therefore 'more than' parts of bicycles." It adds that "the radio portion of the imported articles, cannot be parts of bicycles as they do not contribute to the safe and efficient operation of bicycles."

In a recent discussion of the "more than" doctrine, the Court of Customs and Patent Appeals in *Englishtown Corp. v. United States*, 553 F.2d 1258, 64 CCPA 84 (1977) indicated that:

"[T]here is little dispositive 'doctrine' associated with the so-called 'more than' doctrine. Thus, while in certain cases factors such as the 'predominant function' of an article, or its possession of a 'second significant function,' might have been important, these factors are not uniquely dispositive. To say that an article is 'more than' that described by a particular tariff provision is to say little more than that, in the opinion of the court, the provision cannot be interpreted to cover it. In making this determination, however, the advice in *Green [Green & Son (New York), Inc. v. United States*, 450 F.2d 1396, 59 CCPA 31 (1971)] is to first determine the meaning of the tariff provision involved." 553 F.2d at 1260, 64 CCPA at 87.

It is not questioned that the imported merchandise is a commercial entity that is an entirety for customs classification purposes. The question presented, therefore, pertains to the proper classification of the entirety, consisting of the radio-headlight as a unit, and not either of its parts or functions. It would be unrealistic to attempt to determine the nature of the bicycle radio-headlight apart from its clearly intended ultimate use. *United States v. Pompeo*, 43 CCPA 9, C.A.D. 602 (1955).

That the radio-headlight is designed and intended to be dedicated for use on bicycles is clear from the testimony of Mr. Bishop, and the design and appearance of the article. It is designed for bicycles, used almost exclusively on bicycles, and the unit is sold as a bicycle part. The carton in which the sample is marketed depicts the merchandise mounted on the handlebars of a bicycle, casting light in the path of the bicycle. Furthermore, it contributes to the safe and efficient operation of a bicycle because it illuminates the roadway, and warns motorists of the cyclists' presence.

The radio function or portion of the unit neither detracts from nor prevents the entirety's usefulness as a bicycle part. Merely because the radio can be played independently of the headlight does not alter the fact that the entirety at all times remains fixed to the bicycle, and contributes to its safe and efficient operation. *See Victoria Distributors, Inc. v. United States*, 425 F.2d 759, 57 CCPA 76 (1970); *Gallagher & Ascher Co. v. United States*, 52 CCPA 11, C.A.D. 849 (1964). Furthermore, plaintiff has not introduced any evidence to prove the contrary.

Whether the radio-headlight combination is to be classified as "parts" for customs duty purposes depends upon the pertinence or applicability of the competing provisions of the tariff schedules. General Interpretative Rule 10(ij) provides that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part." Unlike clock-radios (item 685.23, TSUS), and radio-phonograph combinations (item 685.30, TSUS), the combination article at bar is not specifically provided for in the tariff schedules. Therefore, as urged by defendant in its alternative claim, General Interpretative Rule 10(ij) does not preclude its classification as "parts." As between plaintiff's claimed classification of the merchandise as

"electrical articles . . . not specially provided for" and defendant's alternative claimed classification, "other parts of bicycles," the provision for "parts" will prevail since it is deemed more specific than a provision for articles not specially provided for. *J. E. Bernard & Co. v. United States,* 436 F.2d 506, 58 CCPA 91 (1971); *Henry A. Wess, Inc. v. United States,* 79 Cust.Ct. 6, 434 F.Supp. 650 (1977). That this result is clearly warranted may also be gleaned from the *Seventh Supplemental Report of the Tariff Classification Study,* 1963, which added the following interpretation of Rule 10(ij):

> "General Headnote 10(ij)—*Parts.* A provision for 'parts' does not prevail over a specific provision for such part. Thus, a provision for 'parts' is more specific than a provision for 'articles, not specially provided for', but it is not more specific than provisions such as the following for: 'springs' (item 652.85, 'illuminating articles' (items 653.30–.40), 'pumps' (items 660.90–661.15), etc."

■ It is conceded that the importation was improperly classified under item 685.23, TSUS, as "solid-state (tubeless) radio receivers." Based upon the applicable statutory provisions and judicial precedents, it is the determination of the court that the imported radio-headlight is properly classifiable as "other parts of bicycles" under item 732.36, TSUS, and not as "electrical articles, and electrical parts of articles, not specially provided for" under item 688.40, TSUS.

■ Although it has been determined that the imported merchandise is properly classifiable under item 732.36, TSUS, as alternatively claimed by the defendant, the court will not reclassify the merchandise. The cases reveal that where the defendant succeeds in establishing an alternative claim which provides for a rate of duty higher than that assessed by the customs officials, the court will not grant an affirmative judgment in favor of the defendant on its alternative claim. *See Mitsubishi International Corp. v. United States,* 78 Cust.Ct. 4, C.D. 4686 (1977); *J. E. Bernard & Co. v.*

*United States,* 64 Cust.Ct. 525, C.D. 4029, *appeal dismissed,* 58 CCPA 165 (1970); *Randolph Rand Corp. v. United States,* 52 Cust.Ct. 107, C.D. 2445 (1964), *aff'd on other grounds,* 53 CCPA 24, C.A.D. 871 (1966). As stated in *Mitsubishi,* the protest "serves to establish the limits of the action instituted in this court under the provisions of 28 U.S.C. § 1582(a) (1970)," and "[t]hus, the court may not render a judgment which would reclassify the merchandise beyond the limits of the issues as framed by the protest." 78 Cust.Ct. at 19. *See also In re Solvay Process Co.,* 134 F. 678 (C.C.N.D.N.Y.1905); *Innis Speiden & Co. v. United States,* 14 Cust.Ct. 121, C.D. 924 (1945). In *Speiden* this court said:

> "In cases where the correct classification has been found to be outside those limits, the judgment of this and our appellate court has consistently been that the protest must be overruled without affirming the action of the collector . . .." 14 Cust.Ct. at 126.

See also *Pollard Bearings Corp. v. United States,* 75 Cust.Ct. 149, 405 F.Supp. 1074 (1975); *Border Brokerage Co. v. United States,* 64 Cust.Ct. 446, C.D. 4017 (1970); *Sumitomo Shoji New York, Inc. v. United States,* 64 Cust.Ct. 299, C.D. 3994 (1970).

During the trial of this action the defendant initially urged that the entry covering the imported merchandise be reliquidated at the higher rate of duty. In its post trial brief the defendant stated that:

> "Despite the fact that, since the passage of the Customs Courts Act of 1970, there appears to be no reason why this Court might not grant relief upon the alternative claim raised by way of an affirmative defense, defendant does not advance a claim for such a judgment on the merits. It is sufficient for present purposes that plaintiff's protest be overruled, since in so doing, this Court will be affording prospective guidance to the Customs Service in classifying this and similar merchandise."

In effect, it is suggested that the plaintiff, by having brought this action, and the defendant, by the assertion of its alternative

defense, have made it possible for the court to interpret and apply the pertinent provisions of the tariff schedules for the benefit and guidance of both importers and customs officials.

Concluding that "[g]iven the uncertainty as to the jurisdiction of this Court to enter a judgment which would result in the assessment of duties in excess of those originally assessed," the defendant stated that it was not pressing "for reliquidation pursuant to item 732.36" of the tariff schedules. This view was confirmed by a subsequent written communication to the court in which the defendant urged the court to overrule plaintiff's claim "without affirming the classification of the merchandise."

In view of the foregoing it is the determination of the court that the imported merchandise was improperly classified by the customs officials as "solid-state (tubeless)

radio receivers" under item 685.23 of the tariff schedules; that it is not classifiable as "electric articles, and electric parts of articles, not specially provided for," under item 688.40 of the tariff schedules as claimed by plaintiff; and that it is properly and lawfully classifiable as "other parts of bicycles" under item 732.36 of the tariff schedules as alternatively claimed by the defendant.

Plaintiff's action is dismissed, and the protest is overruled without affirming the classification of the customs officials.

Judgment will be entered accordingly.